**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alicia Smith,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-21-00508-PHX-GMS<br><br>**ORDER** |

Plaintiff Alicia Smith ("Plaintiff") seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because portions of the Administrative Law Judge's ("ALJ") decision are based on legal error, the Commissioner's decision will be upheld in part and vacated in part. To the extent it is vacated, the matter is remanded for further administrative proceedings.

**BACKGROUND**

Plaintiff, Ms. Alicia Smith, was born in April 1962. She has a limited education. Plaintiff's impairments include degenerative disc disease, anemia, depression, and pains in her back and spine. ("Administrative Record at Doc. 14" or "AR" 28, 54-55.)

On October 20, 2014, Plaintiff applied for disability insurance benefits, alleging disability beginning October 9, 2009. The claim was denied on October 1, 2015, and

reconsideration was denied on December 21, 2015. (AR 1470.) A written request for a hearing was made on December 30, 2015. On September 15, 2017, Plaintiff appeared with her attorney at a hearing and testified before the ALJ with the assistance of a Spanish-language interpreter. A vocational expert also testified. At the hearing, Plaintiff amended her alleged onset of disability to April 9, 2015. (AR 1470-71.)

The administrative law decision, issued on March 21, 2018, was appealed to the Appeals Council and then to the District of Arizona. (AR 19.) The District Court remanded the case for further proceedings. On remand, Plaintiff appeared with her attorney at a hearing before the ALJ held on December 14, 2020, and, again, testified with the assistance of a Spanish interpreter. A vocational expert testified at this hearing as well. (AR 1470-71.) On January 21, 2021, the ALJ issued a decision that from October 9, 2009, through June 30, 2015, Plaintiff was not disabled within the meaning of the Social Security Act. (AR 1487.) On March 24, 2021, Plaintiff sought review from this Court. (Doc. 1.)

**DISCUSSION**

**I.   Standard Of Review**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Claims that are not actually argued in an appellant's opening brief are not considered on appeal. *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Moreover, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Failure to do so will only be excused when necessary to avoid a manifest injustice. *Id.*

A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance. *Id.* "Overall, the standard of review is highly deferential." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015).

## II. Five-Step Sequential Evaluation

### A. Standard

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### B. ALJ Application

At step one, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act through June 30, 2015, and did not engage in substantial gainful activity from October 9, 2009, through June 30, 2015. (AR 1473.) At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: depression, anemia, degenerative disc disease, cervical radiculopathy, left lower extremity deep vein thrombosis, gastroesophageal reflux disease, and fibromyalgia. (AR 1474-75.)

At step three, the ALJ determined that through the date last insured, Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 1475.) At step four, the ALJ found that through the date last insured, Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can frequently balance and occasionally stoop, kneel, crouch, and crawl. She can occasionally be exposed to extreme cold, humidity, wetness, noise, vibration, dust, odors, fumes, pulmonary irritants, unprotected heights, and moving mechanical parts. She can perform simple, routine, and repetitive tasks involving simple work-related decisions and simple instructions. She can be exposed to moderate noise. (AR 1476-77.) The ALJ further found that through the date last insured, Plaintiff could not perform any of her past relevant work. At step five, the ALJ concluded that through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 1486-87.)

### C. Analysis

#### 1. Literacy

In this case, Plaintiff contests the ALJ's finding on step five because she asserts that the ALJ: (1) failed to apply the grid rules that were in effect at the time of her application; and (2) did not make an express finding about whether she was literate.

##### a. Retroactive Application of Grid Rules

The grid rules are SSA regulations that direct findings of "disabled" or "not disabled." *Heckler v. Campbell*, 461 U.S. 458, 467–68 (1983). "The grids are based on vocational factors, such as age, education and work experience, as well as the claimant's RFC determination." (AR 1583 (citing 20 C.F.R., Pt. 404, Subpt. P, App.2 § 200.00(a)).) Here, Plaintiff argues that the ALJ committed clear error in assessing her education by "retroactively applying a newly revised Agency regulation, rather than properly applying

the version in effect at the time of Plaintiff's original proceedings." (Doc. 17 at 12.) This choice was consequential. As Judge Fine noted in her remand order, under the circumstances of her application and then-controlling grid rules, the outcome of Plaintiff's application "turns on whether she is illiterate or unable to communicate in English."

When Plaintiff submitted her application for disability, Rule 202.09 was in effect.[1] That Rule directed a finding of disabled when a person was closely approaching advanced age, "ha[d] skilled or semi-skilled work history with no transferable skills or an unskilled history, and [was] illiterate or unable to communicate in English." *Silveira v. Apfel*, 204 F.3d 1257, 1261 n.11 (9th Cir. 2000). But when the ALJ issued its most recent decision in January 2021, the grid rules had been revised by the Social Security Commissioner to eliminate "the inability to speak English" as a consideration in step-five analysis because, according to the Commissioner, it was "no longer a useful indicator of an individual's educational attainment or of the vocational impact of an individual's education due to changes in the national work environment." 85 Fed. Reg. 10586–01, n.95 (SSA, Feb. 25, 2020), 2020 WL 885690 (internal punctuation omitted). These new grid rules purported to have retroactive effect, i.e., the Commissioner noted that they applied to cases pending at the time of their adoption—April 27, 2020. Under this new set of grid rules, the ALJ found that Plaintiff was not disabled.

The Ninth Circuit has determined that the Social Security Commissioner may not promulgate regulations with retroactive effect without express congressional approval, but it did not make this determination a matter of precedent. In *Maines v. Colvin,* the court held that "[a] claimant's eligibility for benefits, once determined, is effective based on the date his or her application is filed. Absent express direction from Congress to the contrary, the ALJ should have continued to evaluate L.M.'s application under the listings in effect at the time she filed her application." 666 F. App'x 607, 608 (9th Cir. 2016) (internal citation omitted). In so stating, however, the *Maines* Court cited to *Ball v. Massanari*, 254 F.3d 817, 820–21 (9th Cir. 2001). In *Ball,* the Ninth Circuit gave effect to *legislation* passed by

---

[1] Indeed, Rule 202.09 was in effect throughout all of the relevant proceedings before Judge Fine vacated the ALJ's decision. It was superseded by other rules on April 27, 2020.

- 5 -

Congress that retroactively changed the conditions for social security disability eligibility. *Id.* at 820. But the distinguishing factor between *Ball* and both *Maines* and this case is that in both *Maines* and here, the Commissioner asserted the authority, without any congressional authorization, to make substantive eligibility regulations retroactive.

While the Commissioner cites some district court decisions (and even one outside Circuit decision) that appear to acknowledge that the Commissioner has the authority to make substantive retroactive changes to social security eligibility regulations, the considerable balance of authority in this Circuit holds otherwise. *Hughes v. Kijakazi*, No. 3:20-CV-281 RRB, 2021 WL 5283277, at *1 (D. Alaska Nov. 12, 2021) (holding that "generally the SSA does not have any authority to engage in retroactive rule-making."). While the Social Security Act gave the Commissioner the "full power and authority to make rules and regulations and to establish procedures . . . which are necessary to carry out such provisions," *Hernandez v. Saul*, No. 1:18-CV-00895-SKO, 2019 WL 2725256, at *9 (E.D. Cal. July 1, 2019), the Act "does not grant . . . express statutory authority to retroactively promulgate rules," *Id.* (quoting *Kokal v. Massanari*, 163 F. Supp. 2d 1122, 1134 (N.D. Cal. 2001) ("While the delegation of rule-making authority to implement the Social Security Act is broad, the lack of an express grant of authority to engage in retroactive rulemaking precludes the agency from doing so, at least absent a substantial justification."). Instead, an ALJ must apply "the listings in effect at the time of a claimant's application." *Caffall v. Berryhill*, No. C17-5051-MAT, 2017 WL 5009692, at *2 n. 2 (W.D. Wash. Nov. 2, 2017) (citing *Maines*, 666 F. App'x at 608).

That is the better rule in light of the fairness and due process concerns that underpin the retroactivity analysis the Supreme Court identified in *Landgraf v. USI Film Prod.*. 511 U.S. 244, 266 (1994) ("The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause "may not suffice" to warrant its retroactive application.") (citing *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17 (1976)). Accordingly, the ALJ's decision is vacated, and the case is remanded for a

decision applying the grid rules that were in effect when Plaintiff filed her initial application in 2014.

> **b.      Acceptability of Literacy Analysis**
>
> **2.      In her previous order, Judge Fine noted that the ALJ failed to make any express findings about Plaintiff's literacy, which is a necessary component of assessing education under the grid rules in effect at the time of Plaintiff's initial application. On remand, the ALJ essentially repeated the vacated analysis and, again, made no express findings about Plaintiff's literacy.** *Sullivan v. Hudson*, **490 U.S. 877, 886 (1989) ("[D]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."). Thus, on remand, the ALJ should expressly consider whether Plaintiff is literate under the grid rules in effect at the time of her initial application, as that term was defined by controlling case law. As Judge Fine noted in her order, the ability to communicate in English is a distinct issue.   Fibromyalgia**

In her final argument, Plaintiff's primary complaint is that the ALJ improperly rejected Plaintiff's pain management specialist, Dr. Feldman, and agency examiner, Dr. Fruchtman. On remand, the ALJ repeated much of the same fibromyalgia analysis that Judge Fine rejected in her previous order. However, this time, the ALJ noted that the treating physician's assessments of the Plaintiff's limitations were "rejected by the state doctors at the initial and reconsideration levels." (Doc. 17 at 22.) Plaintiff asserts that "this was a reason rejected by this Court for rejecting an examining opinion." (*Id.*) However, the Court can find no such rejection on the page Plaintiff cites.

Indeed, the prevailing law is that "[a]lthough the treating physician's opinion is given deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ did so here. Specifically, he gave less weight to the treating physicians' opinions because they were inconsistent, contained little narrative explanation, and lacked a factual basis. (AR 1483.)

For example, Dr. Feldman noted that Plaintiff adhered to certain workplace limitations according to his prescribed treatment plan for her fibromyalgia. (*Id.*) While Dr. Feldman stated that these restrictions had been in place since October 2012, he also acknowledged that he only began treating Plaintiff in November 2012. (*Id.*) Thus, according to the ALJ, the basis of his pre-2012 opinions was unclear. (*Id.*) These and other reasons offered by the ALJ are specific and legitimate, and the ALJ supported his position by pointing to substantial evidence in the record, such as Plaintiff's providers' indications that she successfully managed her pain and functionality with her regimen of physical therapy, use of medications, and epidural injections. (AR 1011-12.) Thus, the ALJ did not commit clear error on this point because there was substantial evidence for his factual determinations. Because the Court will not modify the ALJ's decision in this respect, remand is inappropriate, and the credit-as-true rule is inapplicable. *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (noting that "courts are empowered to affirm, modify, or reverse a decision by the Commissioner with or without remanding the cause for a rehearing" where, unlike here, it is clear from the record that "the claimant is entitled to benefits") (internal punctuation omitted).

## CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner of Social Security dated January 21, 2021, is **VACATED,** and this case is **REMANDED** for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court should enter a final judgment consistent with this Order and close the case.

Dated this 24th day of March, 2023.

_____
G. Murray Snow
Chief United States District Judge